MARY H. BRADLEY, Respondent, v. NORMAN W. ROE et al., Appellants.

Submitted February 26, 1940; decided April 16, 1940.

*George H. Carleton, Harold Ashare* and *George C. Terry* for appellants. The motions of the defendants for summary judgment were properly granted by the Special Term and the appellate court erred in vacating the orders and judgment. (*Ditmas* v. *McKane,* 92 App. Div. 344; Surr. Ct. Act, § 127; *Matter of Herley,* 165 Misc. Rep. 46.) Temporary administrators are merely the agents or representatives of the court of their appointment and the public records, together with the undisputed statements of the affidavits, establishes that the defendants acted as such administrators in depositing the certificate for the shares of stock with the depository before notice or knowledge of plaintiff's claim. If plaintiff has a cause of action for possession of the stock it is against the depository and the defendants, as temporary administrators. (*Hastings* v. *Tousey,* 123 App. Div. 480;

*Matter of Lane,* 147 Misc. Rep. 138; *Ditmas* v. *McKane,* 92 App. Div. 344; *Homola* v. *Chase Nat. Bank,* 257 App. Div. 643; *Matter of Herley,* 165 Misc. Rep. 46; *Beaver* v. *Beaver,* 117 N. Y. 421; *Moran* v. *Morrill,* 78 App. Div. 440; *Matter cf Van Slooten* v. *Dodge,* 145 N. Y. 327.) The Appellate Division erred in granting the application of the plaintiff for summary judgment. (*Woodmere Academy* v. *Moskowitz,* 212 App. Div. 457; *Friedman* v. *Friedman,* 251 App. Div. 835; *Matter of Leupp,* 249 App. Div. 572; 277 N. Y. 521.)

*Frederick M. Schlater* and *Louis Kaminar* for respondent. Representatives of estates are personally responsible for their torts and suits should be brought against them in their individual capacities. (*Hildreth* v. *Raffin,* 141 App. Div. 77; *Gratwick* v. *Smith,* 202 App. Div. 600; *Kirchner* v. *Muller,* 280 N. Y. 23; *Matter of Van Slooten* v. *Dodge,* 145 N. Y. 327; *Norling* v. *Allee,* 10 N. Y. Supp. 97; 13 N. Y. Supp. 791; 131 N. Y. 622; *Keating* v. *Stevenson,* 21 App. Div. 604; *Trani* v. *Gerard,* 181 App. Div. 387; *Moniot* v. *Jackson,* 40 Misc. Rep. 197; *Fisher* v. *McNeely,* 110 Wash. 283; *Newcombe* v. *Lottimer,* 12 N. Y. Supp. 381; 58 Hun, 609; 128 N. Y. 618; *Fallon* v. *Egberts Woolen-Mills Co.,* 56 App. Div. 585.) There is no defense to the action. Summary judgment was properly granted to plaintiff. (*Matter of Babcock,* 85 Misc. Rep. 256; 169 App. Div. 903; 216 N. Y. 717; *Francis* v. *New York & B. Elev. R. R. Co.,* 17 Abb. N. C. 1; 108 N. Y. 93; *Crouse* v. *Judson,* 41 Misc. Rep. 338; 93 App. Div. 604; *Whitney* v. *Whitney Elevator & Warehouse Co.,* 121 Misc. Rep. 461; *Pease* v. *Smith,* 61 N. Y. 477; *Employers' Fire Ins. Co.* v. *Cotten,* 245 N. Y. 102; *Pierpont* v. *Hoyt,* 260 N. Y. 26; *McCarthy* v. *Heiselman* 140 App. Div. 240; *Passaic Falls Throwing Co.* v. *Villeneuve-Pohl Corp.,* 169 App. Div. 727; *Douglass* v. *Scott,* 130 App. Div. 322.)

LEHMAN, Ch. J. The plaintiff has brought an action against the defendants for the conversion of one hundred

shares of the common stock of Ohio Oil Company, identified by certificate No. 67144 issued by that company. In her complaint she alleges that the stock was given to George R. Dare by Emma B. Johnson; that the certificate of stock was " kept for safe keeping by said George R. Dare in the safe deposit box of said Emma B. Johnson at the National City Safe Deposit Company * * * on and before December 29th, 1937;" that Emma B. Johnson died on December 29, 1937, and thereafter the defendants were appointed and qualified as temporary administrators of the goods, chattels and credits of Emma B. Johnson; that the defendants took possession of the said certificate of stock, though the certificate and the stock represented by it did not belong to the decedent and her estate had no interest in it; that George R. Dare assigned the stock to the plaintiff and that the plaintiff demanded the certificate of stock from the defendants, who were then in possession of it, and that the defendants refused her demand.

The defendants moved for judgment pursuant to rules 112 and 113 of the Rules of Civil Practice. Their motions were granted at Special Term but the judgment in their favor was reversed by the Appellate Division and that court ordered that summary judgment, pursuant to rule 113, be granted in favor of the plaintiff. The defendants have appealed from that order by leave of the Appellate Division, which has certified two questions:

" 1. Should summary judgment have been granted in favor of plaintiff?

" 2. Should defendants' motion for summary judgment have been granted?"

Upon the motion for summary judgment, it appeared that letters of temporary administration were issued to the defendants, pursuant to an order of the Surrogate's Court of Suffolk county, dated June 2, 1938. The order provides " that any cash deposit, certificate of deposit, currency or securities for the payment of money, belonging to the estate, be deposited, subject to the order of the Temporary Administrators, countersigned by the Surrogate, with the National

City Bank * * * pursuant to the provisions of Section 106 of the Surrogate's Court Act." The temporary administrators took possession of the papers and securities contained in the safe deposit box of the decedent at the National City Safe Deposit Company building and, pursuant to the provisions of the order for their appointment, the administrators deposited the securities found there in the National City Bank subject to the countersignature of the Surrogate. The receipt of the National City Bank, dated July 14, 1938, contains a list of securities received, including six certificates, each for one hundred shares of the common stock of the Ohio Oil Company. Five of these certificates are in the name of the decedent and one certificate is in the name of George R. Dare. The demand of the plaintiff for that certificate was made on August 16, 1938. The defendants informed the plaintiff that they would not deliver the certificate to the plaintiff until she established her title by appropriate proceedings in the Surrogate's Court.

The defendants' denial of plaintiff's demand for the certificate of stock was not an assertion that the decedent owned the stock or that the plaintiff did not own it. Certainly it was not an assertion that, as individuals, these defendants had any right to the stock. The certificate was in the possession of the decedent at the time of her death. It was found in the safe deposit box in which the decedent kept her own property. It either was part of the assets of the decedent or, as the plaintiff claims, had been left in her box for safe-keeping. A temporary administrator has "authority to take into his possession personal property; to secure and preserve it * * * and * * * for the purpose of determining the title to personal property in his possession, he may maintain any action or special proceeding." (Surrogate's Court Act, § 127.) Acting under the authority so conferred and carrying out the duty, which was imposed upon them, to conserve the property of the decedent, these defendants, as temporary administrators, opened the decedent's safe deposit box and delivered to a depositary named by the court the decedent's property contained in

the box. The plaintiff, of course, does not challenge the defendants' right and duty to conserve the property belonging to the decedent in the manner directed by the court. Her complaint is that the defendants delivered to the depositary property which did not belong to the decedent, though it had been left with the decedent for safe-keeping, and then refused to surrender it to the plaintiff upon her demand. In this action she challenges the defendants' right to take such property into their possession, to deliver it to the depositary named by the court, and to refuse to surrender the property to the true owner upon demand.

The certificate shows on its face that George R. Dare is the registered owner of the stock, represented by the certificate. That might, perhaps, constitute notice that the registered owner might claim the stock thereafter but the registered owner is not always the beneficial owner and the form of the stock certificate certainly did not rebut conclusively the inference that the decedent had title or beneficial right to the stock, which might arise from her possession of the stock and the manner in which she took care of it. At the time when the temporary administrators opened the decedent's box and delivered its contents to the depositary, neither Dare nor the plaintiff, his assignee, had made any claim to any stock. When, thereafter, the stock was demanded, compliance with the demand and immediate surrender of the stock, without a prior adjudication that the stock was not an asset of the decedent's estate, would have been at the defendants' peril; for undoubtedly the defendants might have been charged with waste if they delivered assets of the estate to a person not entitled thereto. The summary judgment against the defendants is an adjudication that, nevertheless, only at their peril could the defendants refuse the plaintiff's demand and require that the plaintiff prove her right to the stock by appropriate proceedings in the Surrogate's Court. Thus individual liability has been imposed upon them for the conversion of the plaintiff's property to their own use; though they never, as individuals, asserted any dominion or control of the property and never,

as individuals or as administrators, interfered with the plaintiff's possession of the property and never unequivocally denied the plaintiff's ownership. They are charged with wrong only because they retained custody of plaintiff's property when they found it mingled with the decedent's property in the decedent's safe deposit box and refused to decide whether the plaintiff's claim of title was sound, where an erroneous decision would subject them to liability for dereliction in the performance of their duties as custodians of the assets of the decedent's estate, appointed for that purpose by the court.

The power of the State to regulate descent and distribution of the property of decedents and to regulate the administration of decedent estates does not, it may be conceded, include the power to authorize an administrator to deprive others of their property or to interfere with their possession and enjoyment. A person appointed as administrator who does that is personally liable to the owner of the property for its conversion. (*Matter of Van Slooten* v. *Dodge*, 145 N. Y. 327.) The Surrogate's Court Act does not purport to authorize an administrator to take property from the possession of another. The defendants in this case have not attempted to do so. The certificate, which the plaintiff claims, was, it is undisputed, rightfully in the possession of the decedent at her death; it was kept in the decedent's safe deposit box, mingled with her other property, and the defendants have not as individuals or as administrators asserted or exercised any dominion over it, except the right of temporary custody until the plaintiff establishes her claim by the summary proceeding authorized by section 206-a in such cases.

Where a person is rightfully in possession of property, continued custody of the property and refusal to deliver on demand of the owner until the owner proves his right, constitutes no conversion. The owner is wronged by the custodian only where there is " a defiance of the owner's right, a determination to exercise dominion and control over the property and to exclude the owner from the exer-

cise of his rights." (*Gillet* v. *Roberts*, 57 N. Y. 28, 33.) The authority and duty of the defendants to open the decedent's box and to deliver assets of the estate found therein to the depositary, named by the court as custodian, is clear and is not questioned by the plaintiff. The duty to conserve the assets of the decedent's estate was imposed upon the defendants by the court; and even if the decedent mingled in her safe deposit box, with her own property, securities left with her for safe-keeping, the defendants could not reasonably be expected to decide whether she had done so and to separate property which belonged to her from property merely left in her custody. All the property in the box came rightfully into the possession of the defendants and, at least till some person made claim to some of that property, the defendants acted reasonably and properly in keeping it in their custody and, as conservators appointed by the court, in delivering it to the depositary to be removed only upon order of the court. The defendants were not under any duty to inquire of the registered owner whether the stock belonged to him or to offer to return the stock to him, even if they had reason to believe that the stock was his. Retention of custody of the stock, which had originally been placed in the custody of the decedent, did not deprive the owner of his possession for he had parted with possession and it did not " exclude the owner from the exercise of his rights." Indeed, the defendants had no choice except to retain custody of the stock or to place it in the custody of another, or to abandon the stock and leave it without custodian. When the defendants delivered the stock to the depositary named as custodian by the court, subject to the order of the Surrogate, the property was in effect in the custody of the court; and placing property in the custody of the court is, it is plain, not an assertion of dominion over the property to the exclusion of the real owner who had parted with possession.

The question remains whether refusal thereafter to surrender the property upon the demand of the plaintiff constituted a conversion. In determining that question we assume, at least for the moment, that the plaintiff is the

owner of the stock and that the defendants could, if they chose, surrender it to her when convinced that the decedent's estate has no claim to it. The defendants' right to retain the stock is certainly no less than that of a finder or other person in lawful possession of property. Lord COKE, in the case of *Isaack* v. *Clark* (2 Bulstrode, 306, 312; English Reports, Full Reprint, vol. 80, pp. 1143, 1148) has laid down the rule to be applied in such case: " if a man therefore which findes goods, if he be wise, he will then search out the right owner of them and so deliver them unto him; if the owner comes unto him, and demands them, and he answers him, that it is not known unto him whether he be the true owner of the goods, or not, and for this cause he refuseth to deliver them; this refusal is no conversion, if he do keep them for him."

Such a refusal is not a rejection of the owner's title. It is " qualified and provisional; the possessor may say, ' I am willing to do right, but that I may be sure I am doing right, give me reasonable proof that you are the owner;' and such a possessor, even if over-cautious in the amount of satisfaction he requires, can hardly be said to repudiate the true owner's claim." (Pollock on The Law of Torts [14th ed.], p. 287.) In a case which in some aspects is not unlike the case which we are now considering, it was said: " When the refusal is only for a time, for the purpose of ascertaining ownership, no conversion can be inferred unless the refusal is unreasonably prolonged." (*Buffington* v. *Clarke*, 15 R. I. 437, 438.)

We apply these well-established rules here. The defendants, in the performance of their duty as custodians of the assets of the decedent's estate, have found the property, which plaintiff now claims, in the safe deposit box in which the decedent left her property. No one except the defendants had possession or claimed right of possession to any of that property and the defendants' act of holding custody of all the property in the box, subject to the order of the Surrogate, was calculated to conserve the assets of the estate, and constituted no denial of the right of owners who might thereafter claim the property. The Surro-

gate's Court Act provides in section 206-a a summary and reasonably convenient method for determining such claims. The State having provided such method, the defendants did not assert any dominion or control of the property by refusing to surrender property, which they held as custodians appointed by the court and representing the court, until the court itself was satisfied that the property claimed was not an asset of the decedent's estate.

Upon the undisputed facts and even assuming that the certificate claimed is the property of the plaintiff, it conclusively appears that the defendants were entitled to judgment dismissing the complaint. We are not called upon to determine whether the plaintiff's title to the property was conclusively established by the affidavits presented in opposition to the defendants' motion.

The order of the Appellate Division should be reversed and the judgment of the Special Term affirmed, with costs in this court and in the Appellate Division. The first question certified is answered in the negative, the second question in the affirmative.

LOUGHRAN, FINCH, RIPPEY, SEARS, LEWIS and CONWAY, JJ., concur.

Ordered accordingly.